IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:22-CR-253-RP-2 |
| | § | |
| NATALIE DAWN WILLIAMS (2), | § | |
| | § | |
| Defendant. | § | |

**ORDER**

Before the Court is Defendant Natalie Dawn Williams's ("Williams") motion to suppress evidence. (Dkts. 84, 85).[1] The United States of America (the "Government") filed a response in opposition to the motion. (Dkt. 95). The Court held a hearing on the motion on March 22, 2024. (Min. Entry, Dkt. 102). Having considered the briefing; the testimony, evidence, and arguments presented at the hearing; and the relevant law, the Court will deny the motion to suppress.

**I. BACKGROUND**

Williams and Cody Lee Spencer ("Spencer") were charged in a two-count indictment with (1) Conspiracy to Possess with Intent to Distribute More than 500 Grams of Cocaine, 21 U.S.C. §§ 846 and 841(b)(1)(B); and (2) Possession with Intent to Distribute More than 500 Grams of Cocaine, 21 U.S.C. § 841(a)(1). (Indictment, Dkts. 15, 16). In January 2024, Spencer pled guilty to Count 1. (*See* Dkts. 91, 92, 93, 94, 99). In the instant motion, Williams seeks to suppress evidence discovered through a search of her purse on October 4, 2022. (Mot., Dkts. 84, 85). Having reviewed all of the evidence before it, the Court makes the following factual findings with regard to the relevant events. Unless otherwise noted, these findings are based on the hearing testimony of four of

---

[1] Two identical motions to suppress were filed on the docket. (*Compare* Dkt. 84 *with* Dkt. 85). For clarity, the Court cites to both docket numbers.

the officers who were present on the date of Williams and Spencer's arrests, Agent Mario Sotelo ("Agent Sotelo"), Agent James Ibarra ("Agent Ibarra"), Agent Dwayne Crawley ("Agent Crawley"), and Agent Marlon Mena ("Agent Mena"), (Government's Witness List, Dkt. 103), as well as on a photo of Williams's purse, (Government's Exhibit List, Dkt. 104), which the Court admitted into evidence at the hearing. (Min. Entry, Dkt. 102). The Court finds Agents Sotelo, Ibarra, Crawley, and Mena to be credible witnesses.

### A. Factual Background

In March 2022, U.S. Drug Enforcement Agency ("DEA") task force officers ("TFOs") were informed that Spencer and Williams were selling narcotics in the Austin area. Between May and October 2022, a multi-agency taskforce comprised of state law enforcement officers and DEA TFOs investigated Williams and Spencer. On October 4, 2022, the multi-agency taskforce arranged to conduct a controlled purchase of one ounce of cocaine from Spencer. The team of law enforcement personnel established surveillance outside of Spencer's apartment building and in an apartment approximately two apartments down the hall from Spencer's apartment inside the building. An undercover agent then met Spencer outside the apartment building. Spencer informed the undercover agent that there would be a delay because he was waiting for his supplier to bring the cocaine. Spencer referred to the supplier as a female.

While the agents were waiting for Spencer to obtain the cocaine, a female, later identified as Williams, was observed entering Spencer's apartment building. Agents also observed two males entering and exiting the apartment during this time. Once the controlled purchase was made, Spencer was detained. While Spencer was being detained, agents observed a male run up the stairs of the apartment building. The second suspect was arrested on other outstanding warrants.

While Spencer was being detained, officers questioned Spencer as to whether anyone else was in the apartment. Spencer initially said no, but later recanted, approximately 30-60 minutes after

Spencer was first detained. Spencer identified Williams and informed the agents that she had supplied him with the cocaine that he had sold to the undercover agent.

Meanwhile, after Spencer was arrested, members of the exterior surveillance unit entered the hallway of the apartment building. Soon after Spencer was arrested, Williams then came out of Spencer's apartment[2] and was detained in the hallway of the apartment building. Williams was carrying her purse and her cellphone. Her purse had a center pouch zipped shut, but the two side pouches of the purse were open. During this time, it appeared to the agents that Williams was sending messages to someone on her cellphone. After repeated requests that she stop sending messages to ensure officer safety, Williams refused to comply. Officers then went to remove her phone from her, at which point she became combative. Williams was then placed in handcuffs to ensure officer safety. Officers transported Williams's purse and cellphone into the surveillance apartment. The phone was placed inside the purse at some point, either by Williams or an officer, but the purse was in the condition in which Williams left it:

---

[2] Spencer consented in writing to a search of his apartment. "[T]he following narcotics were located [in his apartment]: approximately 58 hydrocodone tablets, approximately 146 grams of cocaine, 55 Adderall tablets, small container containing GHB, approximately 54.3 grams of crystal methamphetamine, and approximately 48.8 grams of psilocybin." (Resp., Dkt. 95, at 4).



(Government Exhibit 1, Dkt. 95, at 3; *see also* Government's Exhibit List, Dkt. 104).[3]

Officers later removed the handcuffs from Williams when she started to comply. Agent Sotelo asked Williams if she would be willing to cooperate with law enforcement, and she informed him that she did not wish to speak to law enforcement without an attorney present. Williams then was transported to state jail. Williams was asked if she had narcotics on her and she informed the officers that she did. Williams had several narcotics on her: "At the jail, a search revealed hidden in her bra: approximately 60 Xanax tablets, approximately 85 grams of cocaine, and 10 counterfeit Adderall tablets." (Resp., Dkt. 95, at 4).

A see-through, plastic bag of narcotics was seen in an open pouch of Williams's purse. The entire purse was then searched, and a number of narcotics were found: "approximately 350 grams of cocaine, approximately 100 alprazolam tablets, approximately 2004 suspected Adderall tablets, approximately 31.7 grams of crystal meth, approximately 270 hydrocodone tablets, approximately 350 counterfeit Xanax." (Resp., Dkt. 95, at 4). Williams's vehicle was later searched, "and the

---

[3] All four agents present at the hearing identified Government Exhibit 1 as a photo of Williams's purse in the condition it was when it was taken from Williams and placed into the surveillance apartment.

following narcotics were located inside: 129.7 grams of suspected cocaine, approximately 75 counterfeit Adderall tablets, approximately 109.4 grams of suspected ketamine, approximately 159 grams of suspected GHB, approximately 15 colored Ecstasy tablets, approximately 37 grams of a brown like substance, suspected heroin." (*Id.*).

The narcotics discovered in Spencer's apartment, in Williams's purse, and on Williams's body were later tested and came back positive for cocaine, ketamine, and methamphetamine; as well as indicating that they likely contained fentanyl. (Resp., Dkt. 95, at 5). "Subsequent laboratory analysis confirmed that the suspected cocaine seized was indeed cocaine and weighed more than 500 grams." (*Id.*).

## B. The Motion to Suppress

Williams seeks to suppress evidence discovered during the search of her purse on October 4, 2022. (Mot., Dkts. 84, 85). She argues that her purse was closed during her encounter with law enforcement officers, that she did not give law enforcement officers permission to search the purse, and that law enforcement officers illegally searched her purse without probable cause or a warrant. (*Id.* at 1–2). Williams argues that the law enforcement officers' actions violated her constitutional rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as Article I, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure. (*Id.* at 3–4). Williams seeks to exclude: (1) all written and oral statements she made to any law enforcement officers, (2) any testimony by any law enforcement officers regarding these statements, and (3) any contraband seized based on these interactions. (*Id.* at 4).

In response, the Government makes four arguments: (1) law enforcement officers had reasonable suspicion to detain Williams; (2) after her detention, officers developed probable cause to

arrest Williams; (3) the search of the purse was incident to Williams's arrest; and (4) the search of the purse was justified by plain view doctrine. (Dkt. 95).

During the hearing on March 22, 2024, the parties presented testimony, evidence, and arguments. (Min. Entry, Dkt. 102). The Government presented testimony from four of the officers who were present on the date of Williams and Spencer's arrests, Agents Sotelo, Ibarra, Crawley, and Mena, whom the Court finds to be credible. (*Id.*). The Court also admitted into evidence a photo of Williams's purse. (Government's Exhibit List, Dkt. 104).

## II. LEGAL STANDARD

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The essential purpose of the Fourth Amendment is to impose a standard of 'reasonableness' upon law enforcement agents and other government officials in order to prevent arbitrary invasions of the privacy and security of citizens." *United States v. Hunt*, 253 F.3d 227, 230 (5th Cir. 2001) (citing *Delaware v. Prouse*, 440 U.S. 648, 653–54 (1979)).

To suppress evidence on Fourth Amendment grounds, "[t]he party seeking suppression 'has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights.'" *United States v. Wallace*, 885 F.3d 806, 809 (5th Cir. 2018). But this burden may shift if the challenged police action occurred without a warrant, because "warrantless searches and seizures are *per se* unreasonable unless one of the recognized exceptions applies." *United States v. Thomas*, 997 F.3d 603, 609 (5th Cir. 2021). Thus, if the movant makes a preliminary showing that a search or seizure occurred without a warrant, the burden shifts to the prosecution to show "that [the] warrantless search or seizure fits within one of the [recognized] exceptions" to the warrant requirement. *Id.*

### A. Reasonable Suspicion to Detain

"[C]onsistent with the Fourth Amendment, police may stop persons in the absence of probable cause under limited circumstances." *United States v. Hensley*, 469 U.S. 221, 226 (1985). Under *Terry v. Ohio*, "the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio,* 392 U.S. 1, 30 (1968). Further, "if police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." *Hensley*, 469 U.S. at 229. Reasonable suspicion requires "some minimal level of objective justification that consists of more than inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *United States v. Smith,* 273 F.3d 629, 633–34 (5th Cir. 2001). Reasonable suspicion must be based upon "specific facts which, taken together with rational inferences therefrom, reasonably warrant an intrusion." *Id.* at 634. In determining whether reasonable suspicion existed at the time of the search, courts must consider the totality of the circumstances. *Id.*

### B. Probable Cause to Arrest

A warrantless arrest must be based on probable cause. *United States v. Wadley*, 59 F.3d 510, 512 (5th Cir. 1995). "Probable cause to arrest depends 'upon whether, at the moment the arrest was made . . . the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'" *Adams v. Williams*, 407 U.S. 143, 148 (1972) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). "Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction," but rather, is based on the totality of "the circumstances at the time of the arrest." *Id.* at 149; *see also*

*Wadley*, 59 F.3d at 512 (probable cause exists when "the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense"). "'[G]ood faith on the part of the arresting officers is not enough.'" *Beck*, 379 U.S. at 97 (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). However, "[p]olice officers need not personally observe overt criminal activity to have probable cause," as "[t]he observation of unusual activity for which there is no legitimate, logical explanation can be the basis for probable cause." *United States v. Alexander*, 559 F.2d 1339, 1343 (5th Cir. 1977), *cert. denied*, 434 U.S. 1078 (1978). Under the collective knowledge doctrine, "it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of the necessary facts." *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007).

### C. Search Incident to Arrest

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S. 218, 224 (1973). This "search may be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." *Coolidge v. New Hampshire*, 403 U.S. 443, 456 (1971), *holding modified by Horton v. California*, 496 U.S. 128 (1990) (citations omitted). "When an arrest is made . . . it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Chimel v. California*, 395 U.S. 752, 762–63 (1969).

### D. Plain View Doctrine

"[T]he plain view doctrine allows police to seize items without a search warrant." *United States v. Virgil*, 444 F.3d 447, 451 (5th Cir. 2006); *see also United States v. Munoz*, 150 F.3d 401, 411 (5th Cir. 1998) ("Law enforcement officers may seize anything they find in plain view without a search

8

warrant."). An item is in plain view if "(1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was 'immediately apparent;' and (4) the police had a lawful right of access to the item." *United States v. Rodriguez*, 601 F.3d 402, 407 (5th Cir. 2010) (quoting *Horton*, 496 U.S. 128). "The incriminating nature of an item is 'immediately apparent' when the police have 'probable cause' to believe that the item is evidence of a crime or contraband." *Id.* at 407. "Probable cause does not require certainty." *Id.* (quoting *United States v. Waldrop,* 404 F.3d 365, 369 (5th Cir. 2005)).

### III. DISCUSSION

The Court finds that Williams has made a preliminary showing that the challenged police action occurred without a warrant. (*See* Affidavit for Warrant of Arrest and Detention, dated Oct. 5, 2022, Dkts. 84-1, 85-1 (issuing warrant the day after Williams's arrest)). The Court next finds that the Government easily meets its burden of proving that the search fell into one of the recognized exceptions to the warrant requirement. (*See* Resp., Dkt. 95). The Court finds that the motion to suppress, (Dkts. 84, 85), should be denied for four reasons: (1) law enforcement officers had reasonable suspicion to detain Williams; (2) after her detention, officers developed probable cause to arrest Williams; (3) the search of the purse was incident to Williams's arrest; and (4) the search of the purse and the seizure of the drugs inside were justified by the plain view doctrine.

#### A. Reasonable Suspicion to Detain

First, the Court finds that the Government has met its burden of proving that law enforcement officers had reasonable suspicion to detain Williams. Prior to the controlled purchase on October 4, 2022, in March 2022, law enforcement officers were informed that Spencer and Williams were selling narcotics in the Austin area. Law enforcement officers began investigating Spencer and Williams. On October 4, 2022, the undercover agent met with Spencer at his apartment. There, Spencer informed the agent that there would be a delay because he was waiting

for his supplier to bring the cocaine, during which time he referred to the supplier as a female. While the agents were waiting for Spencer to obtain the cocaine, a female was observed entering Spencer's apartment building. Soon after Spencer was arrested, Williams then came out of Spencer's apartment. Spencer's description of a drug supplier as female, combined with Williams entering the apartment shortly thereafter, created a reasonable suspicion that she was the supplier Spencer had referenced. Accordingly, the officers had reasonable suspicion to detain Williams.

### B. Probable Cause to Arrest

Second, the Court finds that the Government has met its burden of proving that after Williams's detention, officers developed probable cause to arrest Williams. Within 30-60 minutes after Spencer was first detained, he identified Williams and informed the agents that she had supplied him with the cocaine that he had sold to the undercover agent. As discussed above, the officers already had reasonable suspicion to detain Williams based on their observations. Spencer's confirmation that Williams was his cocaine supplier, combined with the totality of the circumstances at the time, would have led a prudent person to believe that Williams had engaged in the unlawful supply of narcotics at the time of her arrest.

### C. Search Incident to Arrest

Third, the Court finds that the Government has met its burden of proving that the search of the purse was incident to Williams's arrest. While executing the arrest, the law enforcement officers conducted a "substantially contemporaneous" search in "the immediate vicinity of the arrest." *Coolidge*, 403 U.S. at 456. It was "entirely reasonable" for the officers to search the "evidence on [Williams's] person in order to prevent its concealment or destruction." *Chimel*, 395 U.S. at 762–63. Accordingly, the search of Williams's purse was incident to her lawful arrest.

**D. Plain View Doctrine**

Finally, the Court finds that the Government has met its burden of proving that the search of the purse and the seizure of the drugs were justified by the plain view doctrine. Four conditions must be satisfied for the plain view doctrine to apply: "(1) the officer conducting the seizure must lawfully arrive at the position from which the object is plainly seen, *i.e.*, "the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed;" (2) the object must be in plain view; (3) the object's incriminating character must be immediately apparent, *i.e.*, the officer must have probable cause to believe the object is contraband or evidence of a crime; and (4) the officer must have a lawful right of access to the object itself." *United States v. Paige*, 136 F.3d 1012, 1023 (5th Cir. 1998) (citation omitted); *Horton*, 496 U.S. 128. First, the police lawfully entered the area where the purse was located. Second, the drugs in the purse were in plain view—while the center pouch was zipped shut, the two side pouches of the purse were open, and a see-through, plastic bag of narcotics was seen in one of the open pouches. *See United States v. Villarreal*, 963 F.2d 770, 773 (5th Cir. 1992) ("Individuals can manifest legitimate expectations of privacy by placing items in closed, *opaque* containers that conceal their contents from plain view.") (emphasis added); *see, e.g.*, *United States v. Williams*, 41 F.3d 192, 197 (4th Cir. 1994) ("[W]hen a container is not closed, or transparent, or when its distinctive configuration proclaims its contents, the container supports no reasonable expectation of privacy and the contents can be said to be in plain view."). Third, the incriminating nature of the drugs was "immediately apparent," because the officers had probable cause to believe the drugs were evidence of the drug transaction. *Paige*, 136 F.3d at 1023. And, fourth, the officers had a lawful right of access to the purse, as they were conducting a search incident to a lawful arrest, as discussed above. Accordingly, the search of the purse and the seizure of the drugs were justified by the plain view doctrine.

## IV. CONCLUSION

Williams was lawfully detained based on reasonable suspicion that she was involved in drug trafficking, and within minutes, officers developed probable cause to arrest her. Thereafter, officers conducted a lawful search of her purse incident to that arrest. Furthermore, the drugs observed in her purse were in plain view.

Accordingly, **IT IS ORDERED** that Williams's motion to suppress, (Dkts. 84, 85), is **DENIED**.

**SIGNED** on April 9, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE